699 P.2d 402

**STATE of Arizona, Appellant,**

v.

**Wallace J. HUTCHINSON, Appellee.**

**No. 1 CA–CR 7315.**

Court of Appeals of Arizona, Division 1.

April 25, 1985.

Jane E. Gulde, Kingman City Prosecutor, Kingman, and John C. Dutton, Jr., Asst. Atty. Gen., Phoenix, for appellant.

Robert H. Brooks, Kingman, for appellee.

## OPINION

JACOBSON, Chief Judge.

Appellee, Wallace J. Hutchinson, the owner and operator of the Silver Queen Motel in Kingman, Arizona, was charged and convicted of violating A.R.S. § 44–1503(A), which requires that operators of motels who maintain outdoor advertising signs that advertise rates, must set forth "both the minimum and maximum room or other rental unit rate for accommodations offered for rental." [1]  The sole issue on

---

**1.** A.R.S. § 44–1503, insofar as is pertinent, provides:

appeal is the constitutionality of this statute.

In December, 1982, Hutchinson posted an outdoor advertising sign in front of his motel which read:

$14—Single

Free HBO—Phones

U-Haul Parking

He was subsequently charged, under two criminal complaints, in Kingman Municipal Court with violating A.R.S. § 44–1503. He was found guilty on both counts and fined a total of $205.50. Hutchinson then appealed these municipal court convictions to the Mohave County Superior Court and in that court moved to dismiss the criminal charges on the grounds that A.R.S. § 44–1503 was unconstitutional as a violation of Hutchinson's First Amendment right of freedom of speech.

Based upon a factual record which consisted of the stipulation that Hutchinson rented rooms for $14.00 and that he also rented rooms for more than $14.00 "to groups", the trial court found A.R.S. § 44–1503 was both unconstitutional on its face and that it was also unconstitutional as applied to Hutchinson.[2] The state has appealed.

Before analyzing the constitutional ramifications of the statute in question, it is important to define what the statute attempts to regulate. First, "speech" as such is not prohibited. This statute does not prohibit motel owners from advertising. It does, however, regulate what form the advertising may take and makes a violation of that form a criminal offense.

With these limitations in mind, we turn to whether that regulation is constitutionally permissible. Both parties agree that the "speech" in question is commercial in nature. Further, all parties agree that "commercial speech" is afforded first amendment protection. *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). They differ, however, on the test to be applied in determining the extent to which that protection applies.

The state argues that if the commercial message "is potentially misleading" no first amendment protection is afforded and the manner of advertising may be regulated. Hutchinson, on the other hand, contends that if the speech is concerning a lawful activity, and is not misleading, then such speech is constitutionally protected and additional analysis must be undertaken to determine whether that speech can be regulated.

We begin our analysis with the observation that prior to *Bigelow v. Virginia, supra,* "commercial speech", that is, speech which proposes a commercial transaction, was generally not thought to be subject to first amendment freedom of speech protection. *See Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). While *Bigelow* makes it clear that commercial speech is afforded first amendment protection, subsequent United States Supreme Court decisions have made it equally clear that commercial speech is not afforded the full panoply of first amendment protection as is accorded non-commercial speech. As was stated in *Friedman v. Rogers,* 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979):

Regarding the permissible extent of commercial speech regulations, the court observed in *Virginia Pharmacy [Virginia Pharmacy Board v. Virginia Citi-*

---

A. An owner or operator of an establishment within the scope of this article shall not post or maintain posted on any outdoor or outside advertising sign pertaining to the establishment any rates for accommodations in the establishment unless the sign has posted thereon both the minimum and maximum room or other rental unit rates for accommodations offered for rental. All posted rates and descriptive data on such sign shall be in type and material of the same size and prominence.

B. This section shall not be held to be complied with by signs stating the rate per person or bearing the legend "and up".

2. Because of the lack of any facts peculiar to Hutchinson which would support the conclusion that the statute was unconstitutionally applied as to him, we do not reach this issue.

*zens' Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) ] that certain features of commercial speech differentiate it from other varieties of speech in ways that suggest that 'a different degree of protection is necessary to insure that the flow of truthful and legitimate commercial information is unimpaired' [citation omitted]. Because it relates to a particular product or service, commercial speech is more objective, hence more verifiable, than other varieties of speech. Commercial speech, because of its importance to business profits, and because it is carefully calculated, is also less likely than other forms of speech to be inhibited by proper regulation. These attributes, the court concluded, indicate that it is 'appropriate to require that a commercial message appear in such a form ... as [is] necessary to prevent its being deceptive.... They may also make inapplicable the prohibition against prior restraints.' [citation omitted].

440 U.S. at 16, 99 S.Ct. at 897

■ Thus, the state is correct in its assertion that the state may regulate (in an appropriate fashion) commercial speech which is in fact deceptive. In this case the state asks the court to presume that advertising only one rate for a motel room is deceptive or potentially deceptive. In doing so, the state relies upon *Adams v. Miami Beach Hotel Association,* 77 So.2d 465 (Fla.1955):

The object of said act was to require hotels, motels, and other rooming house operators to tell the whole story when they exercise the privilege of advertising their rooms. It is a matter of common knowledge that travelers are often confronted with a sign proposing comfortable lodging at very modest prices, say $2.50 to $4.00 per night. He pulls up to such a place and finds that all rooms at the advertised price are taken and that the only available lodging is two or three times the price advertised. It can be easily seen that the underlying purpose

of the act is to break up this species of disception.

77 So.2d at 466.

■ In our opinion, the rationale of *Adams* does establish the foundation for a state interest—the prevention of deceptive advertising and thus subject to regulation as contended by the state. Does this then end our inquiry for constitutional purposes, that is, if the potential for a deception is present, does first amendment protection cease? We believe not. As stated in *Re. R.M.J.,* 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982):

Although the potential for deception and confusion is particularly strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception.

455 U.S. at 203, 102 S.Ct. at 937

We emphasize, as we have throughout the opinion, that the states retain the authority to regulate advertising that is inherently misleading or that has proved to be misleading in practice ... but although the states may regulate commercial speech, the first and fourteenth amendments require that they do so with care and in a manner no more extensive than reasonably necessary to further substantial interests.

455 U.S. at 207, 102 S.Ct. at 939

■ Thus we return to Hutchinson's position, that is, A.R.S. § 44–1503 must be analyzed from the standpoint of whether the statute directly advances the governmental interest of prohibiting deceptive practices and whether it is not more extensive than reasonably necessary to further that interest. *Central Hudson Gas & Electric v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Bolger v. Young Drug Products Corp.,* 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).

■ We are hampered in further inquiry along these lines by a lack of factual record. For example, we have no factual basis for assuming that merely stating the

minimum and maximum rates, (as compared to the comprehensive advice required by the Florida statute discussed in *Adams*) deters the deceptive practice. Nor do we know whether in fact this limited information adequately benefits the traveling public. In short, we have no way of ascertaining whether the regulation is "more extensive than reasonably necessary to further substantial interests." *In re R.M.J., supra*, 455 U.S. at 207, 102 S.Ct. at 939. Since Hutchinson has the burden of proof on this issue, given the state's interest in regulating the conduct, we will not presume the unconstitutionality of this statute. Rather, the presumption is that the statute is constitutional until proven otherwise. *Mardian Construction Co. v. Superior Court*, 113 Ariz. 489, 557 P.2d 526 (1976).

Given the limited effect that A.R.S. § 44–503 has, the state interest involved, and the right of the state to regulate deceptive practices, we hold, at least on this record, that A.R.S. § 44–1503 is constitutional. We further hold that Hutchinson has not borne his burden of proof as to "unreasonableness". We express no opinion as to whether this facially constitutional statute as applied to Hutchinson is constitutional or whether or not under an appropriate fact record the statute may, in fact, be overly broad.

The judgment of the trial court is reversed and the matter is remanded for further proceedings.

KLEINSCHMIDT, P.J., and GREER, J., concur.